UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                              )
PEGASYSTEMS, INC.,            )
                              )
              Plaintiff,      )
                              )          Civil Action
v.                            )          No. 19-11461-PBS
                              )
APPIAN CORPORATION and BUSINESS )
PROCESS MANAGEMENT, INC.,     )
                              )
              Defendants.     )
_____)

## MEMORANDUM AND ORDER

December 5, 2019

Saris, C.J.

### INTRODUCTION

In May 2019, defendant Business Process Management, Inc. ("BPM.com") published a "white paper" titled "Market Report: Analysis of Process Automation Investments and Total Cost of Ownership (TCO): Appian, IBM, and Pega" (the "Report"). Co-defendant Appian Corporation ("Appian") highlighted on its website the results of the Report, which were more favorable to Appian than to plaintiff Pegasystems, Inc. ("Pegasystems" or "Pega"). Though not publicly disclosed, Appian commissioned BPM.com to publish the Report.

In the present suit, Pegasystems alleges Defendants made false and misleading claims, in violation of the Lanham Act, 15

1

U.S.C. § 1125(a)(1)(b); Mass. Gen. Laws ch. 93A; common law unfair competition and false advertising; and common law commercial disparagement. Appian and BPM.com brought motions to dismiss all counts under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

After hearing, the Court **DENIES** the motions to dismiss [Dkt. Nos. 15, 18] as to Counts I, II, and IV and **ALLOWS** the motions as to Count III.

## FACTUAL BACKGROUND

The following facts come from the first amended complaint and must be taken as true at this stage. See Newman v. Lehman Bros. Holdings Inc., 901 F.3d 19, 25 (1st Cir. 2018).

### I.  Parties

Pegasystems is a publicly held software company incorporated and headquartered in Massachusetts. Pegasystems develops and licenses, among other products, "business process management" software. Business process management software helps businesses to create custom applications that can automate and improve their business processes.

Appian also develops business process management software and is a major competitor of Pegasystems. Appian is a publicly

held company incorporated in Delaware and headquartered in Virginia.

Business Process Management, Inc. operates the website BPM.com. It is headquartered in Massachusetts. BPM.com holds itself out as "the leading destination for research, white papers and community forums on BPM and process automation." Dkt. 55-1 at 3.

## II.  The BPM.com Report

BPM.com published the Report in May 2019. The Report was commissioned by Appian. This commission is not disclosed anywhere in the Report or any public communications about it. The Report's stated purpose is to "understand how automation software is being used to improve and automate mission-critical processes" and to "identify the differences in both success rates and ownership costs." Dkt. No. 55-1 at 3. The Report focuses on the "Top 3 vendors adopted: Appian, IBM, and Pega."

The Report provides its methodology on the first page. BPM.com sent out an online survey and received 500 responses. BPM.com "eliminated any non-compliant entries, such as those from organizations deemed too small or from firms engaged in the sale, development, or specific services involved with this type of software." Id. BPM.com also conducted follow up interviews to ensure that the surveyed customers were "verified end user organizations." After this process, BPM.com was left with 104

"verified projects." Of those respondents, 17% used Appian and 10% used Pega.

The Report found that "Organizations that run on Pega have spent the most — approximately 2.5 times more than the average, at $46 million. . . . Appian customers have reported the lowest total upfront costs on average, at $4 million." Id. at 7. The Report also found "those using IBM or Pega cited requiring an average of 4-6 times more outside consultants than those using Appian" and "Appian customers report on average 3 times faster application delivery compared to the overall market, and notably 3-5 times faster than what IBM or Pega customers have reported." Id. at 8-9. The Report concluded "Appian was distinguished as the clear leader" based on its low total cost of ownership combined with faster time to market. Id. at 11.

### III. **Appian's Distribution of the Report**

Appian created a page on its own website allowing visitors to request a copy of the Report by inputting their contact information. The page is reached from Appian's homepage by clicking the link for "Analyst Reports" under the "Resources" tab. From there, users can access over thirty reports, most categorized as "Analyst Reports." The BPM.com Report is categorized as a "Whitepaper." Appian summarizes the Report's findings as follows:

Through approximately 500 responses, BPM.com found that on average:

> ➢ Appian customers build complete enterprise solutions 5 times faster
> ➢ Appian customers use 79% fewer resources
> ➢ Appian has more than 2x customers who've reached ROI in 2 years

Dkt. No. 55-2 at 2.

Appian also created a second page on its website, titled "Appian vs Pega: Discover Why Enterprises Choose Appian." Dkt. No. 55-3 at 2. It features large graphics reading: "5x FASTER To Build an App"; "79% FEWER Resources Used"; and "2x MORE Customers Reach ROI in 2 Years." A red box with smaller hyperlinked text says, "READ THE 2019 BPM.COM REPORT."

## MOTION TO DISMISS STANDARD

### I.   Rule 12(b)(6)

In analyzing whether a complaint states a claim under Rule 12(b)(6), the Court sets aside conclusory statements and examines only the pleader's factual allegations. See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

## II.  **Rule 9(b)**

Defendants argue Pegasystems must also meet the "heightened pleading standard" of Federal Rule of Civil Procedure 9(b) because its complaint "alleg[es] fraud." See Dumont v. Reily Foods Co., 934 F.3d 35, 37 (1st Cir. 2019). Under Rule 9(b), a plaintiff must state with particularity "the who, what, where, and when of the allegedly [false or misleading] representation." Kaufman v. CVS Caremark Corp., 836 F.3d 88, 91 (1st Cir. 2016) (quoting Alt. Sys. Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23, 29 (1st Cir. 2004)).

The First Circuit has not addressed whether Rule 9(b) can apply to a Lanham Act false advertising claim. See MMM Healthcare, Inc. v. MCS Health Mgmt. Options, 818 F. Supp. 2d 439, 448 (D.P.R. 2011). It has assumed without deciding that Rule 9(b) applies in false advertising cases involving New York's deceptive practices law, see Kaufman, 836 F.3d at 91, and Mass. Gen. Laws ch. 93A, see Dumont, 934 F.3d at 38-39.

The Court need not decide Rule 9(b)'s reach here. Even if Rule 9(b) applies, the particularity requirement is met. In Kaufman, the First Circuit held that Rule 9(b) was met where the plaintiff alleged that a product label for Vitamin E misleadingly stated it would support heart health. 836 F.3d at 91. It wrote, "CVS is the 'who'; the heart health statements are

6

the 'what'; the label is the 'where'; and the occasion on which Kaufman purchased the product is the 'when.'" Id.

Similarly, here, Pegasystems has pleaded the "who" (Appian and BPM.com), "what" (survey results and associated statements), "where" (in the Report and the web pages promoting it), and "when" (continuously) of the allegedly fraudulent statements. The Court's further analysis examines only whether Pegasystems has failed to state a plausible claim under Rule 12(b)(6).

## DISCUSSION

### I.   Count I: Lanham Act False Advertising, 15 U.S.C. § 1125(a)(1)(B)

#### A. Legal Standards

The Lanham Act prohibits "commercial advertising or promotion" that "misrepresents the nature, characteristics, [or] qualities" of a product. 15 U.S.C. § 1125(a)(1)(B). To prevail on a claim brought under that section, a plaintiff must prove:

> (1) the defendant made a false or misleading description of fact or representation of fact in a commercial advertisement about [its] own or another's product; (2) the misrepresentation is material, in that it is likely to influence the purchasing decision; (3) the misrepresentation actually deceives or has the tendency to deceive a substantial segment of its audience; (4) the defendant placed the false or misleading statement in interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its products.

Cashmere & Camel Hair Mfrs. Inst. v. Saks Fifth Ave., 284 F.3d
302, 310-11 (1st Cir. 2002).

A defendant can be liable under the Lanham Act both for
claims that are "literally false" and those that are "true . . .
[yet] misleading." Clorox Co. P.R. v. Proctor & Gamble
Commercial Co., 228 F.3d 24, 33 (1st Cir. 2000). A literally
false claim can be made "either explicitly or by necessary
implication." Id. at 35. A claim is "conveyed by necessary
implication when, considering the advertisement in its entirety,
the audience would recognize the claim as readily as if it had
been explicitly stated." Id. "Commercial claims that are
implicit, attenuated, or merely suggestive usually cannot fairly
be characterized as literally false," though such claims may
still be misleading. Id. (citation omitted).

This distinction matters because if a challenged claim is
"literally false," the third element of consumer deception is
presumed. Id. Consumer deception is also presumed if a statement
is merely misleading, but "there is evidence that defendants
intentionally deceived the consuming public." Cashmere, 284 F.3d
at 311 n.8. Otherwise, the plaintiff must "show how consumers
have actually reacted to the challenged advertisement rather
than merely demonstrating how they could have reacted." Clorox,
228 F.3d at 33.

**B. Analysis**

The second (materiality) and fourth (placement in interstate commerce) elements of Pegasystems' claim are not contested at this stage. The Court therefore considers only the first, third, and fifth elements.

>    1. *False or misleading representation in commercial advertisement*

For liability to attach under the Lanham Act's false advertising provision, the allegedly false or misleading representation must be made "in commercial advertising or promotion." Podiatrist Ass'n, Inc. v. La Cruz Azul De P.R., Inc., 332 F.3d 6, 19 (1st Cir. 2003) (quoting 15 U.S.C. § 1125(a)(1)(3)). To so qualify, a "representation must (a) constitute commercial speech (b) made with the intent of influencing potential customers to purchase the speaker's goods or services . . . and [c] disseminated to the consuming public in such a way as to constitute 'advertising' or 'promotion.'" RainSoft v. MacFarland, 350 F. Supp. 3d 49, 61-62 (D.R.I. 2018) (alterations in original) (quoting Podiatrist Ass'n, 332 F.3d at 19).

Defendants do not contest the first two prongs of the test for "commercial advertising and promotion."[1] On the third prong,

---

[1] BPM.com incorporated by reference Appian's arguments in support of its motion to dismiss, with one exception not relevant to this section. While there may be unique defenses available to

Appian argues that Pegasystems failed to plead sufficient
dissemination. The Court disagrees. "To constitute advertising
or promotion, commercial speech must at a bare minimum target a
class or category of purchasers or potential purchasers, not
merely particular individuals." Podiatrist Ass'n, 332 F.3d at
19. When Appian posted the Report's findings on its website, it
"target[ed] a class . . . of purchasers." See id. Appian's
representations meet the test for "commercial advertising or
promotion."

Pegasystems argues BPM.com's and Appian's representations
are false or misleading in at least two ways: first, because
they omit the material relationship between Appian and BPM.com –
particularly Appian's commission of the Report – while
presenting the Report as a neutral "white paper"; and second,
because the Report's results are presented as market averages
but do not reflect Pegasystems' actual performance in the
marketplace. Appian responds that it made no false or misleading
statements because the Report discloses its methodology and does
not claim to offer "generally applicable" comparisons between
Pegasystems and Appian.

Pegasystems has plausibly pleaded that the omission of the
relationship between Appian and BPM.com renders the

---

BPM.com on this claim, they were not presented at this stage and
were not considered by this Court.

representations in the Report and on Appian's website false or misleading. An omission is actionable under the Lanham Act if it "renders an affirmative statement false or misleading." Lokai Holdings LLC v. Twin Tiger USA LLC, 306 F. Supp. 3d 629, 639-40 (S.D.N.Y. 2018). False statements under the Lanham Act include those "conveyed by necessary implication when, considering the advertisement in its entirety, the audience would recognize the claim as readily as if it had been explicitly stated." Clorox, 228 F.3d at 35. While Defendants did not state that the Report was independently developed, "the audience would recognize the claim as readily as if it had been explicitly stated." See id. Appian identifies BPM.com as the Report's author and then describes BPM.com as "a leading market research group." Dkt. No. 55-2 at 2. Within the Report, BPM.com states its purpose was to "understand how automation software is being used." Dkt. No. 55-1 at 2. Nowhere in the Report or Appian's statements promoting it would a reader learn that Appian was involved in the Report's production — they would likely be left with the opposite impression. The allegation that the Report and website, when viewed in their entirety, are at the very least misleading is plausible because their description conveys neutrality.

Additionally, Pegasystems has plausibly pleaded that Appian made a literally false statement on its website when it wrote that BPM.com reached the Report's results "Through approximately

500 responses." Dkt. No. 55-2 at 2. The Report discloses that of those 500 responses, only 104 were verified and analyzed and, of those, only 27% of respondents used either Pegasystems or Appian. The number of responses yielding the comparisons between the two competitors falls far short of five hundred. While the Report openly acknowledges these figures, Appian's representation on its website about the Report's sample size is literally false.

### 2. Consumer deception

Unless consumer deception is presumed, Pegasystems will need to show that "a substantial segment of [the Report's] audience" was actually deceived. Cashmere, 284 F.3d at 311. "An advertisement's propensity to deceive the viewing public is most often proven by consumer survey data." Clorox, 228 F.3d at 36. But a plaintiff does not need to "identify the particular consumer survey that will be used to support its allegations to survive a motion to dismiss." Id. at 37 n.11.

Even if Pegasystems must show actual confusion, it has put forth sufficient evidence to plausibly state a claim. In its first amended complaint, Pegasystems alleges that "[c]ustomers have informed Pegasystems that Appian has distributed or drawn their attention to the Report. These customers have been confused or deceived by the false and misleading conclusions of the Report[.]" Dkt. No. 55 ¶ 63. At least some consumers have

allegedly been misled by the Report and Appian's representations about it. This allegation satisfies Iqbal's plausibility requirement as to consumer deception.

### 3. Injury

Finally, Pegasystems must plausibly plead injury "either by direct diversion of sales or by a lessening of goodwill associated with its products." See Cashmere, 284 F.3d at 311. Whereas a plaintiff seeking injunctive relief can show only a likelihood of consumer confusion, a plaintiff who seeks monetary damages "must show actual harm to its business." Id.

Pegasystems alleges that Defendants' statements have been disseminated to "major customers for which Appian and Pegasystems compete," representing "prospective revenue streams in the millions of dollars." Dkt. No. 55 ¶ 42. The Court can reasonably infer that an explicit unfavorable comparison between Appian and Pegasystems is likely to divert those customers from Pegasystems to Appian, injuring Pegasystems. See MMM Healthcare, 818 F. Supp. 2d at 451 (holding plaintiffs "sufficiently satisf[ied] the plausibility standard of the Rule 12(b)(6)" where "it [was] reasonable to conclude that false information provided to clients . . . could potentially entail the clients to disenroll from the MMM program").

Pegasystems has plausibly pleaded the contested elements of its Lanham Act false advertising claim.

## II.   Count II: Mass. Gen. Laws ch. 93A §§ 2, 11

"To establish a false advertising claim under Chapter 93A, a plaintiff must prove all of the elements of a false advertising claim under Section 43(a) of the Lanham Act." Empire Today, LLC v. Nat'l Floors Direct, Inc., 788 F. Supp. 2d 7, 26 (D. Mass. 2011). As a result, "[f]alse advertising claims under the Lanham Act and Chapter 93A rise and fall together." Spruce Envtl. Techs., Inc. v. Festa Radon Techs., Co., 248 F. Supp. 3d 316, 321 (D. Mass. 2017). Defendants nonetheless argue separately that Pegasystems cannot state a claim under Chapter 93A even if it states a Lanham Act claim.

Appian argues that the Court should dismiss Count II because the challenged conduct did not occur "primarily and substantially" in Massachusetts. See Mass. Gen. Laws ch. 93A, § 11 ("No action shall be brought or maintained under this section unless . . . the unfair or deceptive act or practice occurred primarily and substantially within the commonwealth [of Massachusetts].")

"To defeat a [Chapter 93A] claim, the defendant bears the burden of demonstrating that the relevant conduct took place elsewhere." HipSaver Co. v. J.T. Posey Co., 490 F. Supp. 2d 55, 71 (D. Mass. 2007). Informed by "the purpose and scope of Chapter 93A," courts must determine "the center of gravity of the circumstances that give rise to the claim." Kenda Corp. v.

14

Pot O'Gold Money Leagues, Inc., 329 F.3d 216, 235 (1st Cir.
2003) (quoting Kuwaiti Danish Comput. Co. v. Dig. Equip. Corp.,
781 N.E.2d 787,799 (Mass. 2003)). "[A]t the pleading stage a
[ch. 93A,] § 11 claim may survive a motion to dismiss based on a
'primarily and substantially' challenge upon a showing that the
plaintiff is located in Massachusetts and that the injury
occurred in Massachusetts." Jofran Sales, Inc. v. Watkins &
Shepard Trucking, Inc., 216 F. Supp. 3d 206, 216 (D. Mass. 2016)

Appian argues, though, that "where the relevant deceptive
conduct involves communications between a defendant and third
parties, courts have said that the 'center of gravity' lies in
the state in which the communications occurred (i.e., were
'published')." HipSaver, 490 F. Supp. 2d at 71. In HipSaver, the
Court denied summary judgment where the defendant distributed
false advertising materials to health care facilities in
Massachusetts through physical brochures and catalogs. Id. at
72. Appian argues its statements were "published" when Appian
posted them on its website, which was "presumably . . . in
Virginia." Dkt. No. 17 at 18.

Because a "primarily and substantially" challenge involves
a fact-based inquiry, motions to dismiss a § 11 claim are
generally denied. See, e.g., iLab Sols. LLC v. Idea Elan, LLC,
No. 14-CV-14267-ADB, 2015 WL 1505698, at *3 (D. Mass. Apr. 1,
2015). Here, the complaint alleges the plaintiff is based in

Massachusetts, the injury occurred in Massachusetts, one of the defendants is in Massachusetts and another has an office here, and the document at issue was created here. These allegations suffice to survive a "primarily and substantially" challenge.

BPM.com argues in its reply that Pegasystems cannot state a claim against it under Chapter 93A because there is no business relationship between BPM.com and Pegasystems. See John Boyd Co. v. Bos. Gas Co., 775 F. Supp. 435, 440 (D. Mass. 1991) (noting the Supreme Judicial Court "has stressed the existence of some contractual or business relationship between the parties as a precursor to liability under Chapter 93A"). This argument was absent from BPM.com's opening brief and is waived without prejudice at this stage. See Fin. Res. Network, Inc. v. Brown & Brown, Inc., 754 F. Supp. 2d 128, 139 (D. Mass. 2010) (collecting cases declining to consider argument raised for first time in reply brief).

### III. Common Law Claims

Pegasystems also brings two common law claims, citing Massachusetts law. Appian cites both Massachusetts and Virginia law in its motion to dismiss, but does not undertake a choice-of-law analysis. The Court will apply Massachusetts law. The torts alleged occurred in Massachusetts and no other jurisdiction is "more concerned and more involved." See Cohen v. McDonnell Douglas Corp., 450 N.E.2d 581, 585 (Mass. 1983)

## A. Count III: False Advertising and Unfair Competition

Common law false advertising and unfair competition are separate torts under Massachusetts law, but the facts alleged do not state a claim under either analysis.

Under Massachusetts law, "[m]isleading advertising is not a common law tort except to the extent that it amounts to fraud." Thornton v. Harvard Univ., 2 F. Supp. 2d 89, 95 (D. Mass. 1998). "To prevail on a claim of fraudulent misrepresentation under Massachusetts law, the plaintiff must show that the defendant 'made a false representation of a material fact with knowledge of its falsity for the purpose of inducing the plaintiff to act thereon, and that the plaintiff reasonably relied upon the representation as true and acted upon it to his damage.'" Eureka Broadband Corp. v. Wentworth Leasing Corp., 400 F.3d 62, 68 (1st Cir. 2005) (emphasis added) (quoting Russell v. Cooley Dickinson Hosp., Inc., 772 N.E.2d 1054, 1066 (Mass. 2002)). Pegasystems is not the appropriate plaintiff to bring this claim. Pegasystems did not rely on BPM.com's or Appian's alleged misrepresentations - consumers were the intended audience, not competitors.

As to unfair competition, "[i]t is settled in Massachusetts that 'the gravamen of an unfair competition claim is the likelihood of consumer confusion as to the source of the goods or services.'" Open Software Found., Inc. v. U.S. Fid. & Guar. Co., 307 F.3d 11, 17 (1st Cir. 2002) (quoting Datacomm

17

<u>Interface, Inc. v. Computerworld, Inc.</u>, 489 N.E.2d 185, 191 (Mass. 1986)). Pegasystems has not alleged consumers will be confused about the source of Pegasystems' or Appian's products.

**B. Count IV: Commercial Disparagement or Injurious Falsehood**

Under Massachusetts law, a plaintiff alleging commercial disparagement must prove a defendant:

> (1) published a false statement to a person other than the plaintiff; (2) "of and concerning" the plaintiff's products or services; (3) with knowledge of the statement's falsity or with reckless disregard of its truth or falsity; (4) where pecuniary harm to the plaintiff's interests was intended or foreseeable; and (5) such publication resulted in special damages in the form of pecuniary loss.

<u>HipSaver, Inc. v. Kiel</u>, 984 N.E.2d 755, 763 (Mass. 2013) (citing Restatement (Second) of Torts § 651).

Though sharing common elements with a Lanham Act false advertising claim, commercial disparagement differs in several respects. Commercial disparagement imposes liability only for false statements, while the Lanham Act also encompasses misleading statements. A Lanham Act claim has no knowledge requirement, while a commercial disparagement claim requires "actual malice," meaning the defendant either has knowledge of a statement's falsity or acts with reckless disregard of its truth or falsity. <u>See</u> <u>Kiel</u>, 984 N.E.2d at 767. On the other hand, commercial disparagement does not require that the false statement be made in advertising, as the Lanham Act does.

18

Several elements of commercial disparagement are met easily here. The allegedly false statements were "of and concerning" Pegasystems' products, as Pegasystems was explicitly and repeatedly named. Pecuniary harm was foreseeable, as the statements sought to persuade potential consumers to "choose Appian" over Pegasystems. Pegasystems has also sufficiently pleaded pecuniary loss in the form of diversion of sales.

Finally, Pegasystems' claim survives the motions to dismiss on the elements of falsity and actual malice. A representation in a study is not false simply because the study's "design . . . was flawed." Kiel, 984 N.E.2d at 761. In Kiel, the author of a medical journal article was not liable for commercial disparagement where the "article plainly acknowledged possible flaws and limitations with the methodology that was used" and the plaintiff did not allege that the author "inaccurately interpreted or reported the collected data." Id. at 764-65. Unlike the plaintiff in Kiel, Pegasystems alleges BPM.com "manipulated its selection of responses and projects in order to create a sample favorable to Appian and detrimental to Pegasystems." Dkt. No. 55 ¶ 24. Taking this allegation as true, the Court can draw the reasonable inference that the Report's unfavorable statements about Pegasystems were based on skewed or inaccurate data and so were false. Under this theory, the actual

malice requirement would be satisfied, as both BPM.com and Appian would be aware of the statements' falsity.

### ORDER

Appian's motion to dismiss [Dkt. No. 15] is **ALLOWED** as to Count III and **DENIED** as to Counts I, II, and IV. BPM.com's motion to dismiss [Dkt. No. 18] is **ALLOWED** as to Count III and **DENIED** as to Counts I, II, and IV.

SO ORDERED.

/s/ PATTI B. SARIS
Hon. Patti B. Saris
Chief United States District Judge