## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| _____ ) | |
| PEGASYSTEMS, INC., ) | |
| ) | |
| Plaintiff/Counterclaim Defendant, ) | |
| ) | |
| v. ) | |
| ) | Civil Action |
| APPIAN CORPORATION, ) | No. 19-11461-PBS |
| ) | |
| Defendant/Counterclaim Plaintiff, ) | |
| ) | |
| and BUSINESS PROCESS MANAGEMENT, INC., ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

### MEMORANDUM AND ORDER

May 22, 2020

Saris, D.J.

### INTRODUCTION

Appian Corporation and Pegasystems, Inc. are competitors in the area of "business process management" software. In this false advertising case, the Court previously allowed in part and denied in part Appian's motion to dismiss Pegasystems' claims. See Pegasystems, Inc. v. Appian Corp. ("Pegasystems I"), 424 F. Supp. 3d 214, 226-27 (D. Mass. 2019). The Court assumes familiarity with that opinion.

Pegasystems now moves to dismiss Appian's counterclaims, which allege violations of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B); Mass. Gen. Laws ch. 93A ("Chapter 93A");

1

commercial disparagement; and defamation, in connection with
four separate fact patterns. After review of the parties'
briefs, the Court **ALLOWS IN PART** and **DENIES IN PART** Pegasystems'
motion to dismiss [Dkt. 82]. The motion is allowed as to the IBM
Whitepaper and PegaWorld 2019 Presentations but denied as to the
Sinur Paper and LinkedIn Post.

## FACTUAL BACKGROUND

The following facts come from the counterclaim complaint
and must be taken as true at this stage. See Newman v. Lehman
Bros. Holdings Inc., 901 F.3d 19, 23 (1st Cir. 2018).

### I.    IBM Whitepaper

In March 2011, Pegasystems posted on its website a
publication titled "Pega BPM System z Benchmark Test Results"
(the "IBM Whitepaper"). The paper provided the results of
testing done in collaboration with IBM to determine if
Pegasystems' platform could be "effectively deployed across an
entire corporate enterprise . . . with a servicing population of
approximately 10,000 users." Dkt. 71 at 22. The paper concluded
that Pegasystems "met or exceeded all performance goals" for the
testing. Id. at 23.

Appian's claims are based on the fact that the testing
employed the IBM System z processor, "a $26-million machine —
the highest-end and most expensive mainframe IBM sold in its
class at the time." Id. Appian alleges that "extremely few (if

any) Pegasystems customers would ever be using such a powerful
supercomputer to run Pegasystems' software." <u>Id.</u> Appian also
alleges the paper currently misleads consumers because the
testing was performed on a long-discontinued version of
Pegasystems' platform.

## II. PegaWorld 2019 Presentations

Pegasystems hosts an annual conference called PegaWorld,
attended by over 6,000 people. Appian alleges that at the 2019
conference, Pegasystems executives made "false statements . . .
designed to exaggerate narrow claims regarding Pegasystems'
products by third parties and to present them as statements
relating to broader areas of wider relevance to customers." Dkt.
71 at 24. The allegedly false statements, which remain available
by video on Pegasystems' website, included:

- Stating that Pegasystems has "40,000+ certified
  professionals globally" when that number included
  professionals whose certification had expired or whose
  certification was for an older version of Pegasystems'
  software. <u>Id.</u> at 28.

- Stating that independent analyst Gartner had "declared
  Pega as the Digital Process Automation leader for many
  years in a row" with a graphic taken from Gartner's Magic
  Quadrant for Intelligent Business Process Management
  Suites. <u>Id.</u> at 25.

- Stating that Pegasystems "get[s] accolades from analysts"
  while displaying the four charts below, three of which
  Appian alleges were "falsely and misleadingly captioned."
  <u>Id.</u> at 26.



Specifically, Appian alleges that the second chart from the left is labeled "Digital Process Automation" but came from a report on "Software For Digital Process Automation For Deep Deployments"; the third chart is labeled "Real-Time Decisions & AI" but came from a report on "Real-Time Interaction Management"; and the fourth chart is labeled "End-to-End Work Management" but came from a report on "Intelligent Business Process Management." Id. at 26-27.

**III. Sinur Paper**

On February 24, 2014, Jim Sinur published a six-page paper titled "Appian and Pegasystems – Head to Head Comparison" (the "Sinur Paper"). The paper was published exclusively on Pegasystems' website. It was removed from the website in January 2019.

The paper features a short biography of Sinur, in which he is described as "an author and independent thought leader in applying business process management (BPM) to innovative and intelligent business operations (IBO)." Dkt. 71-1 at 8. The biography also references Sinur's prior experience at Gartner, a global research and advisory firm.

The paper does not explain its objective or methodology, beyond one reference to what Sinur "saw" "[w]hile at Gartner." Id. at 7. For both Pegasystems and Appian, the paper discusses each platform's advantages, challenges, and two case studies. In its "Final Summary," the paper recommends:

> If you are picking one over the other, you need to look at the nature of the processes you will attempt over time. If they are strategic, pick Pega. If you happen to own both tools, use Appian for tactical standalone processes that will not grow in performance needs and use Pega for strategic and wide impact processes.

Id.

In March 2014, a Pegasystems executive tweeted a link to the paper along with text reading, "Great comparison of @pega vs @appian via @JimSinur shows why our technology is better business software." Dkt. 71 at 21-22. Also in March 2014, a blog post by an Appian competitor, Bizagi, called the paper "a tongue-lashing from an industry analyst and thought leader, Jim Sinur" and noted that "[t]he report claims to 'look objectively at the strengths and weaknesses of both vendors.'" Id. at 21.

Appian alleges on information and belief that the Sinur
Paper was commissioned by Pegasystems and that Pegasystems
"influenced its content." Dkt. 71 at 18.[1] The Sinur Paper nowhere
discloses a commission.

## IV.   LinkedIn Post

Soon after the publication of this Court's opinion denying
in part Appian's motion to dismiss, a Pegasystems executive
published a post on LinkedIn (the "LinkedIn Post") that read,
"We all encounter examples of business ethics we find
questionable . . . patent trolls, paid content promoted as
'unbiased truth,' and sometimes just blatant lies. I'm proud to
work for a company that is not afraid to undertake the
unpleasant action of litigating against those whose actions we
believe are unlawful and unethical. If you're thinking about
Appian, you should read this first . . ." Dkt. 71 at 29-30.

The post then shared a link to a third-party blog. The
linked post, by the Boston-area community news blog Universal
Hub, discussed this Court's motion-to-dismiss decision and wrote
that "Pegasystems . . . [had] shown enough proof" of its claims

---

[1] Appian submitted to the Court supplemental materials obtained
in discovery confirming that Pegasystems had commissioned the
Sinur Paper (Dkt. 101). Pegasystems argues the Court is barred
from considering those extraneous materials on a Rule 12(b)(6)
motion. The Court **DENIES** as moot Pegasystems' motion to exclude
(Dkt. 104) because the Court need not rely on the supplemental
materials to decide that Appian's claims regarding the Sinur
Paper may proceed.

against Appian to "make its case to a jury." Dkt. 88 at 11. The
LinkedIn Post was reposted or "echoed" by seven other
Pegasystems' employees on LinkedIn. Dkt. 71 at 30.

## MOTION TO DISMISS STANDARD

In analyzing whether a complaint states a claim under Rule
12(b)(6), the Court sets aside conclusory statements and
examines only the pleader's factual allegations. See Ashcroft v.
Iqbal, 556 U.S. 662, 679 (2009). "To survive a motion to
dismiss, a complaint must contain sufficient factual matter,
accepted as true, to 'state a claim to relief that is plausible
on its face.'" Id. at 678 (quoting Bell Atl. Corp. v. Twombly,
550 U.S. 544, 570 (2007)). "A claim has facial plausibility when
the plaintiff pleads factual content that allows the court to
draw the reasonable inference that the defendant is liable for
the misconduct alleged." Id.

## DISCUSSION

The Court assumes familiarity with its prior Order in
Pegasystems I and does not repeat the legal standards applicable
to the counterclaims under the Lanham Act, Chapter 93A, or
commercial disparagement, except as necessary.

### I.   IBM Whitepaper

In connection with the IBM Whitepaper, Appian brings claims
under the Lanham Act and its Chapter 93A corollary. Pegasystems

argues Appian's claims regarding the IBM Whitepaper fail because the paper contains no false or misleading statements.

Appian asserts it is "false or misleading" for Pegasystems to claim that the IBM Whitepaper showed the Pegasystems platform could be scaled "across an entire corporate enterprise" of "approximately 10,000 users" when the test used a computer too expensive for most businesses to afford, the IBM System z processor. See Dkt. 71 at 22-23. However, that caveat is obvious from the paper's title and from the website's description of the paper, "IBM and Pega System z Benchmark Shows Near Linear Scalability." Id. at 23 (emphasis added). Any potential customer reading the paper would immediately know that the System z processor was used to conduct the test. Appian does not allege that the test results were misreported or that the paper asserted they could be achieved on another, less expensive computer system. Particularly given the technically savvy consumer base for the products at issue, a limitation contained in the title of the paper cannot give rise to a Lanham Act false advertising claim.

Appian also alleges the IBM Whitepaper was false or misleading because it remained available on Pegasystems' website long after the Pegasystems version that was tested had been discontinued. Again, any reader would know that the paper was

published in 2011 and could take that date into account when deciding how much to rely on the paper.

Because Appian's claims regarding the IBM Whitepaper fail on the merits, the Court need not reach Pegasystems' timeliness argument in regard to this fact pattern.

## II.  PegaWorld 2019 Presentations

In connection with the PegaWorld 2019 Presentations, Appian brings claims under the Lanham Act and its Chapter 93A corollary. Pegasystems argues Appian's claims fail on the elements of (1) falsity and (2) materiality.

Appian first alleges that four claimed accolades did not accurately reflect the study from which they were derived:

- "Digital Process Automation" should read "Intelligent Business Process Management";

- "Digital Process Automation" should read "Software for Digital Process Automation For Deep Deployments";

- "Real-Time Decisions & AI" should read "Real-Time Interaction Management";

- "End-to-End Work Management" should read "Intelligent Business Process Management."

Dkt. 71 at 25-27. The latter three labels appeared on slides behind a speaker for less than 30 seconds and no direct reference was made to them.

Appian correctly notes that "materiality is generally a question of fact." LivePerson, Inc. v. 24/7 Customer, Inc., 83 F. Supp. 3d 501, 518 (S.D.N.Y. 2015) (citation omitted).

Nonetheless, it is implausible that these semantic inaccuracies would have "influence[d] the purchasing decision" of the sophisticated consumers who purchase business process management software. See Cashmere & Camel Hair Mfrs. Inst. v. Saks Fifth Ave., 284 F.3d 302, 311 (1st Cir. 2002). Appian has therefore failed to plausibly allege materiality.

The same is true of Pegasystems' statement that it has "40,000+ certified professionals globally" when some of them have lapsed certificates or certificates for obsolete versions of Pegasystems. It is implausible that the precise number of currently certified professionals, as conveyed in passing on a presentation slide, would be material to a consumer.

### III. Sinur Paper

In connection with the Sinur Paper, Appian brings claims under the Lanham Act, its Chapter 93A corollary, and commercial disparagement.

#### A. Timeliness

Pegasystems first argues that Appian's claims based on the Sinur Paper, which was first published on Pegasystems' website in 2014, are untimely.

The parties dispute whether a statute of limitations or the equitable principle of laches applies to Appian's Lanham Act claim. The First Circuit has not considered this question, but at least the Second, Seventh, and Ninth Circuits have applied

laches to Lanham Act false advertising cases. See Jarrow Formulas, Inc. v. Nutrition Now, Inc., 304 F.3d 829, 837 (9th Cir. 2002); Hot Wax, Inc. v. Turtle Wax, Inc., 191 F.3d 813, 821 (7th Cir. 1999); Conopco, Inc. v. Campbell Soup Co., 95 F.3d 187, 191 (2d Cir. 1996). This Court will do the same.

The Court must first determine the most analogous state statute of limitations. "[I]f a [Lanham Act] claim is filed within the analogous state limitations period, the strong presumption is that laches is inapplicable; if the claim is filed after the analogous limitations period has expired, the presumption is that laches is a bar to suit." Jarrow, 304 F.3d at 837. The most analogous statute of limitations here is the four-year period under Chapter 93A. See Island Insteel Sys. v. Waters, 296 F.3d 200, 214 (3d Cir. 2002) (holding claim under state deceptive trade practices statute, not common-law fraud claim, was "most analogous" to Lanham Act claim).

The laches period starts to run when "the plaintiff knew or should have known" of the defendant's wrongful conduct. Oriental Fin. Grp., Inc. v. Cooperativa de Ahorro y Credito Oriental, 698 F.3d 9, 21 (1st Cir. 2012). Because the Counterclaims were filed on December 17, 2019, laches presumptively applies if Appian knew or should have known about its claims prior to December 17, 2015. Appian argues that the Court cannot determine from the face of the Counterclaim the date on which Appian "knew or

11

should have known" about the allegedly false statements in the Sinur Paper. In particular, Appian's claim is based in part on Pegasystems' concealment of the Sinur Paper's commission so Appian was unable to learn the facts relevant to its claim until discovery in this case.

Furthermore, even assuming laches presumptively applies, "[l]aches requires proof of (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense." Oriental, 698 F.3d at 21. Because a laches defense "necessarily requires a fact-sensitive inquiry into the particular circumstances of the case. . . . a laches defense is normally not susceptible to pretrial resolution." Vineberg v. Bissonnette, 548 F.3d 50, 57 (1st Cir. 2008); see also Brigham & Women's Hosp., Inc. v. Perrigo Co., Civil Action No. 13-11640-RWZ, 2015 WL 382072, at *2 (D. Mass. Jan. 28, 2015) (noting in patent case it is "inappropriate to grant a motion [to dismiss] 'based solely on presumptions' of laches" since "[t]he facts evidencing unreasonableness of the delay, lack of excuse, and material prejudice to the defendant, are seldom set forth in the complaint" (citations omitted)). The Court lacks a factual record to analyze laches at this stage and will not dismiss the Lanham Act claim related to the Sinur Paper on that basis.

For commercial disparagement and Chapter 93A, the parties agree that statutes of limitations are at issue and that they are three and four years, respectively. Under Massachusetts law, "a cause of action . . . does not accrue until the plaintiff knew, or in the exercise of reasonable diligence should have known of the factual basis for his cause of action." Wolinetz v. Berkshire Life Ins. Co., 361 F.3d 44, 47-48 (1st Cir. 2004) (citation omitted).

As with the laches defense, Appian argues that it is not clear from the face of the Countercomplaint when Appian knew or should have known about its causes of action in light of "Pegasystems' ongoing concealment of its commissioning of the Sinur Paper." Dkt. 88 at 25. Appian alleges that it was unable to learn the factual basis for its claim regarding the Sinur Paper's commission until the discovery in this case. At this stage, Appian has plausibly alleged that the statute of limitations has not run. The Court therefore proceeds to the merits of Appian's claims related to the Sinur Paper.

B. **Lanham Act and Chapter 93A**

Pegasystems argues Appian's Lanham Act and Chapter 93A claims regarding the Sinur Paper fail on the elements of (1) falsity and (2) actual consumer deception.

Pegasystems argues that the Sinur Paper contains no false or even misleading statements. The Court disagrees. As with the

13

BPM.com Report that is the subject of Pegasystems' claims against Appian, the presentation of a commissioned paper as the analysis of a neutral third party is at least misleading. See Pegasystems I, 424 F. Supp. 3d at 223 ("The allegation that the Report and website, when viewed in their entirety, are at the very least misleading is plausible because their description conveys neutrality."). Appian has plausibly alleged that the Sinur Paper is a commissioned paper that misleadingly conveys neutrality, such as when it affirmatively describes Jim Sinur as an "independent thought leader." Dkt. 71 at 18.

Pegasystems continues that even if the Sinur Paper is misleading because it fails to disclose its commission, Appian cannot show actual consumer deception, which is required where claims are merely misleading rather than literally false. See Clorox Co. P.R. v. Proctor & Gamble Commercial Co., 228 F.3d 24, 33 (1st Cir. 2000). Appian has alleged that a competitor described the Sinur Paper as a "tongue-lashing from an industry analyst and thought leader" who sought to "look objectively" at the two platforms. Dkt. 71 at 21. It is reasonable to infer that if a competitor believed the Sinur Paper's analysis to be independent, consumers did as well.

C. **Commercial Disparagement**

In Pegasystems I, the Court held that "[s]everal elements of commercial disparagement [were] met easily," writing:

> The allegedly false statements were "of and concerning"
> Pegasystems' products, as Pegasystems was explicitly and
> repeatedly named. Pecuniary harm was foreseeable, as the
> statements sought to persuade potential consumers to
> "choose Appian" over Pegasystems. Pegasystems has also
> sufficiently pleaded pecuniary loss in the form of
> diversion of sales.

424 F. Supp. 3d at 226. Appian plausibly pleads those elements in a similar manner here.

The main points of contention are falsity and the "actual malice" scienter requirement. In <u>Pegasystems I</u>, the Court held those elements were met because Pegasystems alleged BPM.com "manipulated its selection of responses and projects in order to create a sample favorable to Appian and detrimental to Pegasystems." 424 F. Supp. 3d at 226. The Court could "draw the reasonable inference that the Report's unfavorable statements about Pegasystems were based on skewed or inaccurate data and so were false." <u>Id.</u> Appian has similarly alleged here that "Pegasystems paid Mr. Sinur to write the paper and influenced its content." Dkt. 71 at 18. For the same reasons as in <u>Pegasystems I</u>, the commercial disparagement claim regarding the Sinur Paper survives a motion to dismiss.

## IV. LinkedIn Post

In connection with the LinkedIn Post, Appian brings a claim for defamation, as well as claims under the Lanham Act and Chapter 93A.

**A. Defamation**

"To establish a defamation claim under Massachusetts law, four elements are required: (1) that '[t]he defendant made a statement, concerning the plaintiff, to a third party'; (2) that the statement was defamatory such that it 'could damage the plaintiff's reputation in the community'; (3) that '[t]he defendant was at fault in making the statement'; and (4) that '[t]he statement either caused the plaintiff economic loss . . . or is actionable without proof of economic loss.'" Shay v. Walters, 702 F.3d 76, 81 (1st Cir. 2012) (quoting Ravnikar v. Bogojavlensky, 782 N.E.2d 508, 510-11 (Mass. 2003)). Pegasystems argues that Appian has not plausibly pleaded the elements of falsity,[2] fault, or economic loss.

Appian alleges the LinkedIn Post contains falsehoods because it states or implies that Appian's "business ethics [are] questionable," that Appian has told "blatant lies," and that Appian's conduct is "unlawful and unethical." Dkt. 88 at 16-17. In these circumstances, calling Appian's business practice "unethical" is a protected opinion since ethical standards can vary. See Tamburo v. Dworkin, 974 F. Supp. 2d

---

[2] In some cases, Massachusetts law authorizes defamation claims even for truthful statements, see Mass. Gen. Laws ch. 231 § 92, but the parties do not invoke that statute here.

1199, 1213 (N.D. Ill. 2013) ("Whether a person's actions are ethical . . . is not objectively verifiable.")

However, accusing another party of being a "liar" has generally been held to be defamatory. See Milkovich v. Lorain Journal Co., 497 U.S. 1, 18-19 (1990) ("If a speaker says, 'In my opinion John Jones is a liar,' he implies a knowledge of facts which lead to the conclusion that Jones told an untruth. Even if the speaker states the facts upon which he bases his opinion, if those facts are either incorrect or incomplete, or if his assessment of them is erroneous, the statement may still imply a false assertion of fact."). Although the LinkedIn Post ostensibly relied on this Court's prior opinion regarding Pegasystems' claims against Appian, that opinion does not support that Appian told "blatant lies." The Court determined in that opinion that Pegasystems had plausibly alleged that Appian misleadingly failed to disclose the BPM.com Report's commission and falsely cited the Report's original sample size, rather than the smaller number of respondents whose data was actually used. Pegasystems I, 424 F. Supp. 3d at 223. Though these false or misleading acts were enough to state a claim under the Lanham Act, they are arguably not "blatant lies."

Pegasystems also argues Appian's defamation claim fails on the element of fault, because Appian has not plausibly alleged that Pegasystems made the statements at issue with knowledge

that they were false or with reckless disregard for their falsity. However, the author of the Post had access to the Court's prior opinion and would have known that the opinion did not support an accusation that Appian told "blatant lies."

Finally, Pegasystems argues Appian has not plausibly pleaded economic loss. Appian was not required to plead special damages because the LinkedIn Post's statements are "actionable without proof of economic loss" as "statements that may prejudice the plaintiff's profession or business." Ravnikar, 782 N.E.2d at 511. Appian has plausibly stated all the elements of a defamation claim.

### B. Lanham Act and Chapter 93A

Pegasystems argues Appian's Lanham Act and Chapter 93A claims regarding the LinkedIn Post fail on the elements of (1) "commercial advertisement" and (2) falsity.

There is a threshold requirement in Lanham Act false advertising actions that the challenged statements be made "in commercial advertising or promotion." Podiatrist Ass'n, Inc. v. La Cruz Azul De P.R., Inc., 332 F.3d 6, 18 (1st Cir. 2003) (quoting 15 U.S.C. § 1125(a)(1)(B)). Pegasystems argues the LinkedIn Post was not commercial advertising, with no further analysis. While the Post did not directly advertise Pegasystems' products, it was "made with the intent of influencing potential customers to purchase [Pegasystems'] goods or services" over

those of Appian. See id. at 19. The Post targeted readers who were "thinking about Appian" as a vendor. The "commercial advertising" requirement is met.

Pegasystems argues that, in any case, the LinkedIn Post did not contain any "false or misleading" statements because it was the honest opinion of the writer and accurately reflected Pegasystems' position in ongoing litigation. As discussed above, Appian has plausibly pleaded that the accusation that Appian told "blatant lies" was unsupported by this Court's prior opinion. Placing that accusation alongside a blog post about this Court's opinion was at least misleading, if not false. The Lanham Act and Chapter 93A claims related to the LinkedIn fact pattern survive Pegasystems' motion to dismiss.

### ORDER

The Court **ALLOWS IN PART** and **DENIES IN PART** Pegasystems' motion to dismiss [Dkt. 82]. The motion is **ALLOWED** in regard to the IBM Whitepaper and PegaWorld 2019 Presentations but **DENIED** as to the Sinur Paper and LinkedIn Post. The Court **DENIES** as moot Pegasystems' motion to exclude supplemental materials [Dkt. 104]. Parties shall submit a proposed discovery schedule regarding the remaining counterclaims within 14 days.

SO ORDERED.

                                    /s/ PATTI B. SARIS
                                    Hon. Patti B. Saris
                                    United States District Judge